COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Complainant,

v.

James R. COOK, Respondent.

No. 87–310.

Supreme Court of Iowa.

July 22, 1987.

James E. Gritzner and Kasey W. Kincaid of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for complainant.

Roger J. Kuhle, Des Moines, for respondent.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, WOLLE, and NEUMAN, JJ.

HARRIS, Justice.

We granted the committee permission to appeal from the commission's dismissal of these attorney disciplinary proceedings. On review we agree with the committee's contention that respondent's misconduct warrants a suspension.

The respondent would not emerge blameless under either version of the facts. Under both views there was, for several years, a wholesale failure to comply with the income tax laws and one wrong certification that tax returns were filed. The committee contends we are faced with an almost routine failure to file tax returns. Respondent attorney concedes his failure to file but professes innocence on the basis of honest confusion brought about by pressing personal problems. We find respondent's confusion does not justify his misconduct.

James R. Cook, the respondent attorney, was admitted to practice in 1972. Although his practice is a general one it does not include tax work. He has prepared his own returns. The failures at issue were part of a pattern. During the years covered by the record his filings were generally tardy.

He filed his 1981 federal tax return on November 9, 1982, five months beyond the date it was due under an extension he had obtained. He filed his 1982 federal return on August 18, 1983, three days beyond the extension he had obtained. He filed his

1983 federal return on August 20, 1984, five days beyond the extension he had obtained.[1] He filed no 1983 state return until eighteen months after it was due. Respondent filed his 1984 federal and state tax returns two months beyond the date they were due under extensions. Respondent certified on his 1985 client security questionnaire that he had filed his 1983 Iowa income tax return when he had not.

We are told of two crises in defendant's life which he says led to his filing failures. He states his 1981 return was delayed because income for that year was derived from a law partnership which became the subject of a hostile dissolution. Division of fees and obligation for expenses were disputed. It seems likely this dispute was the ground for the extension and, to whatever extent appropriate, may well have justified a further one. We are not told whether another extension was sought.

Respondent points out that he eventually received a $1658.29 tax refund for the 1981 return. This fact, and the complications incident to dissolving his law partnership, do much to explain the failure, but do not excuse it. The 1981 failure is to be viewed together with the wholesale failure on respondent's part to file his 1983 state tax return and his state and federal returns for 1984. He says he simply overlooked his 1983 state return. He claims this came about through oversight and inadvertence. The two-month delays in the 1984 returns were not overlooked but rather are blamed on the dissolution of respondent's marriage. He says his wife would not sign the returns before the August 15, 1985, due date (under an extension).

■ I. All these violations are not to be considered separately, but must be viewed as a pattern of conduct. Respondent would have us view them separately and thinks that each, standing alone, would be insufficient to warrant more than a reprimand. And he thinks he was in general justified by reason of the problems he faced during the period in question.

■ It scarcely needs to be said that during recent years we have been presented with a depressing array of attorney disciplinary cases, many involving failure to file tax returns. Nearly every lawyer involved in these cases could cite personal problems as the cause of the professional downfall. But life in general is a series of problems and it is the fundamental purpose of our profession to face and solve them. Our profession certainly cannot excuse misconduct on the basis of personal problems. Respondent's failure cannot be justified on the basis of his personal problems.

■ II. Our inquiry next focuses on respondent's claim there was no showing his failures were willful. The question is one of his awareness of the failures, to be determined when they occurred and not, as he seems to argue, sometime long after the fact.

■ Turning to perhaps the most serious breach, the failure to file the 1983 state return, we do not think the committee had the burden of showing he did not remember it was due. Such a subjective matter would be beyond the reach of any direct proof.

■ The proper burden was explained in *State v. Osborn*, 368 N.W.2d 68, 70 (Iowa 1985). All that is required is a knowing failure to comply; no evil or wicked motive need be shown. The record, including respondent's repeated application for other extensions, is ample to show his awareness of his failures. He knew of his obligation to file and knew when the returns were due. It stretches credulity to suppose respondent continued to "forget" his 1983 return during the time he prepared and filed his 1984 returns.

Under a long line of our cases respondent's conduct was a violation of DR1–102(A)(5), (6). *See, e.g., Committee on Professional Ethics and Conduct v. Piazza*, 389 N.W.2d 382, 383 (Iowa 1986); *Committee on Professional Ethics and*

---

**1.** He insists his 1982 federal return (three days late) and his 1983 federal return (five days late) were filed on time, by virtue of being mailed within the period of extension. He may well be right with regard to these two returns and we give them no further consideration.

*Conduct v. Munger,* 375 N.W.2d 248, 250–51 (Iowa 1985).

Respondent's false certification of his client security questionnaire was also misconduct, a violation of DR1–102(A)(4). *Munger,* 375 N.W.2d at 251–52. His explanation that in certifying he mistakenly thought he had filed the return fails on the same ground that led us to reject confusion as an excuse for not filing the return.

Respondent's misconduct calls for a sanction.

III. There is one fact, which we take as established, which distinguishes this case from our former attorney disciplinary proceedings arising from failure to file income tax returns. Respondent points out that he was the one who informed the committee of his failures. He did so in writing before the matter was otherwise made known.

The committee expresses some skepticism concerning his motives for the disclosure, suggesting that revelations incident to respondent's 1985 bankruptcy made the committee's discovery of his failures inevitable and only a matter of time. For two reasons we do not speculate on the committee's skepticism about the respondent's motives. In the first place there is no sound way for us to plumb them. All we know for sure is that he faced squarely up to the matter by his written disclosure. In the second place, as we have repeatedly noted, eventual discovery of a tax filing failure is in each instance inevitable and only a matter of time. We accept respondent's word for it that he was not prompted to his disclosure by a realization or fear that discovery was otherwise imminent. We however find no reason to believe, as previously pointed out, that he only then became aware that he had not previously filed his returns.

We think respondent's voluntary disclosure is of considerable significance. Although it will not serve to justify or excuse his misconduct it does weigh heavily in our selection of a sanction. This is because it indicates both an acknowledgment of his failures and a willingness to face up to them.

Respondent's misconduct demands a suspension. But we conclude that the period of suspension should be substantially reduced by reason of his voluntary disclosure.

The license to practice law of James R. Cook, the respondent, is hereby suspended for an indefinite period of time, with no possibility of reinstatement for three months from the date of the filing of this opinion. The suspension shall apply to all facets of the practice of law. Upon application for reinstatement, if any, respondent shall establish that he has refrained from all facets of the practice of law as designated in Iowa supreme court rule 118.12 and has otherwise complied with those restrictions which our rules place upon suspended attorneys.

LICENSE SUSPENDED.