# IN THE SUPREME COURT OF IOWA

No. 09–1111

Filed November 19, 2010

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**JEFFREY FIELDS,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommends revocation of attorney's license to practice law. **LICENSE SUSPENDED.**

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

Jeffrey Fields, Iowa City, pro se.

**STREIT, Justice.**

This matter comes before the court on the report of a division of the Grievance Commission of the Supreme Court of Iowa. *See* Iowa Ct. R. 35.10. The Iowa Supreme Court Disciplinary Board alleged the respondent, Jeffrey Fields, violated ethical rules by neglecting two client matters and by failing to file his income tax returns for the years 2002 through 2004. On the latter matter, he was prosecuted by the State of Iowa and convicted of two counts of fraudulent practice in the second degree (class "D" felonies) for which he received deferred judgments and three years probation.

The grievance commission found Fields violated the Iowa Code of Professional Responsibility for Lawyers and the Iowa Rules of Professional Conduct[1] and recommended the respondent's law license be revoked. Upon our respectful consideration of the findings of fact, conclusions of law, and recommendation of the commission, we find the respondent committed several ethical violations and suspend his license to practice law indefinitely with no possibility of reinstatement for eighteen months.

## I. Standard of Review.

Our review of attorney disciplinary proceedings is de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 55 (Iowa 2009). We give respectful consideration to the findings and recommendations of the commission, but we are not bound by them. *Id.* The burden is on the board to prove attorney misconduct by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd.*

---

[1]The Iowa Rules of Professional Conduct became effective July 1, 2005, replacing the Iowa Code of Professional Responsibility for Lawyers. To the extent that some of the conduct alleged occurred before the effective date of the new rules and some after, both sets of rules apply.

*v. Conrad*, 723 N.W.2d 791, 792 (Iowa 2006). "This burden is less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004). Upon proof of misconduct, we may impose a lesser or greater sanction than that recommended by the commission. *Conrad*, 723 N.W.2d at 792.

## II. Background Facts and Proceedings.

Jeffrey Fields has been practicing law in Iowa since 1997. Except for a very short period of time, the respondent has been a sole practitioner, practicing primarily in the area of criminal defense. Three separate matters comprise the current disciplinary action. We will consider each charge separately.

**A. Townsend Civil Rights Claim.** In August 2003, Fields agreed to represent Orville and Billie Townsend in a civil rights claim. In 2005, an action was filed in state court against Johnson County, the City of Iowa City, and individual defendants. The defendants subsequently removed the claim to federal court. Fields, who was not admitted to practice in federal court, advised the federal district court that he would associate with an admitted attorney on the case and that he would seek admission himself. Fields failed to do either. Fields also made representations to his clients that he did not keep. After numerous delays, the case was dismissed due to Fields continued failure to respond to discovery requests and his failure to file a resistance to the defendants' motions for summary judgment. At the time of the dismissal, the federal district court's order encouraged the federal magistrate to enter sanctions against Fields for his failure to comply with the Federal Rules of Civil Procedure, the local rules, and the court's orders. In addition,

the court forwarded a copy of its order dismissing the civil rights action to the disciplinary board.

**B. Ferguson Estate.** From 2004 to 2007, Fields was the attorney for the executor of the John H. Ferguson, Jr. estate. On June 1, 2006, a notice of delinquency for failure to file an interlocutory report was issued to Fields. When Fields failed to rectify the delinquency, the board sent a letter of inquiry. After a second inquiry from the board, Fields responded that he would file a response on or before January 5, 2007. When he failed to respond by the self-imposed deadline, the board initiated a notice of complaint against the respondent on January 9, 2007. The estate was subsequently closed in March 2007, three years after it was opened.

**C. Failure to File Income Tax Returns.** On April 25, 2008, Fields was charged with three counts of fraudulent practice in the second degree as a result of his failure to file state income tax returns for tax years 2002, 2003 and 2004. *See* Iowa Code §§ 422.25(5), 714.8(10), 714.10 (2003).[2] On September 26, 2008, Fields pleaded guilty to two counts of fraudulent practice in the second degree. Judgment on each count was deferred for three years, and Fields was placed on probation with the department of corrections until September 26, 2011. He was

---

[2]Iowa Code section 714.8(10) defines a fraudulent practice as "any act expressly declared to be a fraudulent practice by any other section of the Code." Section 422.25(5) provides that

> [a] person . . . required to supply information, to pay tax, or to make, sign or file a deposit form or [income tax] return . . ., who willfully makes a false or fraudulent deposit form or return, or willfully fails to pay the tax, supply the information, or make, sign, or file the deposit form or return, at the time or times required by law, is guilty of a fraudulent practice.

Such a practice constitutes fraudulent practice in the second degree "where the amount of money or value of property or services involved exceeds one thousand dollars but does not exceed ten thousand dollars." Iowa Code § 714.10(1) (2003).

also ordered to pay civil penalties and to make full restitution of taxes, penalties, and interest to the State of Iowa for the tax liability incurred for the tax years covered in the trial information. The state agreed not to file any additional tax-related criminal charges against Fields for tax years 1997 through 2007, provided all returns for those years were filed within thirty days of the date of sentencing.

**D. Board Complaint.** On November 21, 2008, the disciplinary board filed a complaint against Fields.[3] The board alleged Fields' neglect and misrepresentations in the Townsend civil rights claim violated the Iowa Code of Professional Responsibility DR 1–102(A)(1) (prohibiting conduct that violates a disciplinary rule), DR 1–102(A)(4) (prohibiting conduct involving misrepresentation), DR 1–102(A)(5) (prohibiting conduct prejudicial to the administration of justice), DR 1–102(A)(6) (prohibiting conduct that adversely reflects on the fitness to practice law), and DR 6–101(A)(3) (prohibiting neglect of a client matter), as well as the Iowa Rules of Professional Conduct 32:1.1 (requiring a lawyer to provide competent representation to a client), 32:1.3 (requiring a lawyer to act with reasonable diligence and promptness), 32:1.4 (requiring a lawyer to keep his client reasonably informed), 32:8.4(a) (providing it is misconduct to violate a disciplinary rule), 32:8.4(c) (providing it is misconduct to engage in conduct involving misrepresentation), and 32:8.4(d) (providing it is misconduct to engage in conduct prejudicial to the administration of justice).

The board alleged Fields' conduct in his representation of the executor in the Ferguson estate constituted neglect and incompetence.

---

[3]The complaint originally contained four counts. After Fields rectified the issue involved in the third count, the board moved to amend the complaint to delete this count. For this reason, we give this claim no further consideration.

Combined with his failure to cooperate with the investigation, the board alleged the respondent violated DR 1–102(A)(1), (5), and (6) and DR 6–101(A)(3) of the Iowa Code of Professional Responsibility for Lawyers and rules 32:1.1, 32:1.3, 32:8.4(a) and (d) of the Iowa Rules of Professional Conduct.

The board alleged Fields' failure to file his state income tax returns for the years 2002 through 2004 and his subsequent guilty plea to two counts of fraudulent practice in the second degree supported a finding Fields violated DR 1–102(A)(3) (prohibiting conduct involving moral turpitude), as well as DR 1–102(A)(4), (5), and (6).

**E. Disciplinary Hearing and Commission Recommendation.** On May 1, 2009, a hearing on this matter came before a division of the commission. Due to his failure to respond to the board's inquiries, the allegations against Fields were deemed admitted, and the hearing was limited to the issue of the appropriate sanction.

At the hearing, Fields did testify on his own behalf. In his testimony, Fields did not deny the allegations brought against him. He admitted he neglected his clients and failed to file his state income returns for the years alleged. He also admitted he had still not filed the delinquent returns, although it was a condition of his probation.

Fields testified to the circumstances surrounding the time upon which the allegations are based. According to Fields, during this period of time, he would often go to work but be unable to complete the tasks at hand. Although he knew how to complete tax returns and had completed many client returns in the past, Fields found himself putting off his own tax returns until completing them became a huge task that he was unable to address. He experienced severe financial problems and

had difficulty keeping his office open. Until recently, Fields testified, he did not understand why this was occurring.

In March 2009, at the recommendation of his probation officer, Fields sought medical treatment. He has since been diagnosed as suffering from several mental health conditions, including manic/depressive bipolar disorder for which he is currently receiving treatment including medication. He was also diagnosed with attention deficit disorder. Fields acknowledged that, in his current condition, he is unable to practice law. He admitted he needs to make behavioral changes, and even then, he might never be able to function as a sole practitioner again.

Fields requested the commission not revoke his license, but instead suspend it so that he might have the opportunity in the future, should he establish his medical competency, to practice law again. The commission, however, recommended the Fields' license to practice law be revoked.

### III. Ethical Violations.

The commission found, and we agree, that in his representation of the Townsends and the Ferguson estate, the respondent neglected his clients' matters in violation of DR 6–101(A)(3) and rule 32:1.3. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wagner*, 768 N.W.2d 279, 283 (Iowa 2009) (dilatory handling of estate violated Iowa Court Rule 32:1.3); *Casey*, 761 N.W.2d at 59 (neglect of probate matters violated DR 6–101(A)(3)). We also agree that the undisputed allegations support a finding Fields made misrepresentations to the Townsends and to the court in violation of DR 1–102(A)(4), (5), and (6) and rules 32:8.4(c) and (d); failed to keep the Townsends reasonably informed in violation of rule 32:1.4; failed to provide the Townsends with competent representation in

violation of rule 32:1.1, when he did not associate with an attorney admitted to practice in federal court; and failed to respond to the board's inquiries in both the Townsend and Ferguson cases in violation of DR 1–102(A)(5) and (6) and rule 32:8.4(d). *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 307–08 (Iowa 2009) (finding attorney's failure to keep clients informed about the status of their cases violated rule 32:1.4(a)(3) and misrepresentations violated DR 1–102(A)(4), (5), and (6), as well as rule 32:8.4(d)); *Wagner*, 768 N.W.2d at 286–87 (holding repeated claims by attorney to client that documents were forthcoming when they were not ready constituted misrepresentations in violation of rule 32:8.4(c)); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 331 (Iowa 2009) (holding attorney's failure to respond to board's inquiries in a timely manner constituted conduct prejudicial to the administration of justice and adversely reflected on counsel's fitness to practice law); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis*, 749 N.W.2d 694, 700 (Iowa 2008) (holding lawyer inexperienced in an area of law who did not associate with lawyer competent to handle the matter violated rule 32:1.1).

However, we conclude the board has failed to establish by a convincing preponderance of the evidence Fields' actions in the Ferguson estate constituted incompetence. Although his dilatory handling of the probate matter evidenced serious neglect, the board has provided no evidence Fields was incompetent in this matter. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hauser*, 782 N.W.2d 147, 153 (Iowa 2010) (providing that a finding of incompetence requires a showing the attorney

lacked the necessary legal knowledge and skill to complete the tasks or had not made a competent analysis of the problem).[4]

The final count of the complaint involves Fields' failure to file state income tax returns for the years 2002 through 2004. The State of Iowa has done audits for these years, and the respondent has yet to pay his income taxes for 2003 and 2004. In addition, at the hearing Fields admitted that he has not filed any tax returns since 1996. In September 2008, Fields pleaded guilty to two counts of fraudulent practice in the second degree in connection with his failure to pay his taxes and file his returns.[5] Such actions are undisputed violations of our ethical rules. As we have previously stated:

> "[W]hen a lawyer's income exceeds the sum triggering the tax return filing requirement, failure to file a tax return constitutes misrepresentation of that income" in violation of DR 1–102(A)(4). In addition, "[s]uch misrepresentation is a deceitful offense involving moral turpitude" in violation of DR 1–102(A)(3). It is also conduct . . . that adversely reflects on the fitness to practice law in violation of DR 1–102(A)(6).[6]

---

[4]We do not consider DR 1–102(A)(1) and rule 32:8.4(a), which provide that a lawyer shall not violate a disciplinary rule, as separate violations. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton,* 784 N.W.2d 761, 769 (Iowa 2010).

[5]In its complaint against Fields, the board asserted the respondent is precluded from challenging his fraud convictions as a basis for disciplinary action. Under Iowa Court Rule 35.7(3), principles of issue preclusion may be used in a lawyer disciplinary case when certain conditions are met. *See* Iowa Ct. R. 35.7(3). The conditions are met here. Moreover, Fields has not challenged the validity of his convictions or their consideration in this disciplinary action.

[6]The board's complaint alleged misconduct under the Iowa Code of Professional Responsibility for Lawyers only with respect to Fields' failure to file tax returns for the years 2002 through 2004. In the past, we have held that failing to file tax returns constituted conduct prejudicial to the administration of justice in violation of DR 1–102(A)(5). *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Runge,* 588 N.W.2d 116, 118 (Iowa 1999). Recently, however, we held a violation under a comparable provision of the Iowa Rules of Professional Conduct required an impact on the functioning of the courts or the processing of court matters or matters ancillary to the court. *See Templeton,* 784 N.W.2d at 768–69 (holding "the mere act of committing a crime does not constitute a violation of [rule 32:8.4(d) which] specifically prohibits an act that . . . violat[es] the well-understood norms and conventions of the practice of law"). Therefore, unless the facts and circumstances establish a lawyer's failure to file

*Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Runge*, 588 N.W.2d 116, 118 (Iowa 1999) (quoting *Comm. on Prof'l Ethics & Conduct v. Belay*, 420 N.W.2d 783, 784 (Iowa 1988)); *accord Iowa Supreme Ct. Att'y Disciplinary Bd. v. Iverson*, 723 N.W.2d 806, 810 (Iowa 2006). Therefore, upon our de novo review, we concur with the board that Fields' failure to file and pay his taxes and subsequent conviction for fraud constitute violations of DR 1–102(A)(3), (4), and (6).

**IV. Sanction.**

The goal of our ethical rules is

> "to maintain public confidence in the legal profession as well as to provide a policing mechanism for poor lawyering." When deciding on an appropriate sanction for an attorney's misconduct, we consider "the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and [the court's] duty to uphold the integrity of the profession in the eyes of the public." We also consider aggravating and mitigating circumstances present in the disciplinary action.

*Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Honken*, 688 N.W.2d 812, 820 (Iowa 2004) (quoting *Comm. on Prof'l Ethics & Conduct v. Gill*, 479 N.W.2d 303, 306 (Iowa 1991) (first quote); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. D'Angelo*, 619 N.W.2d 333, 338 (Iowa 2000) (second quote)). In this case, Fields' misconduct consisted of neglect, misrepresentation, fraud in failing to file and pay his taxes, and failure to respond to the board's inquiries. Although we must tailor sanctions specific to the facts of each case, we find our prior cases involving similar violations instructive. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Isaacson*, 750 N.W.2d 104, 109 (Iowa 2008) (holding that although we

---

tax returns adversely impacted the functioning of the courts, we would not find such conduct in the future to violate rule 32:8.4(d).

apply no standard sanction to any particular misconduct, prior cases can be instructive).

The sanction for attorney misconduct involving neglect typically ranges from a public reprimand to a six-month suspension. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss*, 786 N.W.2d 860, 868 (Iowa 2010). The sanction imposed in a particular instance often depends upon whether there are multiple instances of neglect, other additional violations, or a history of past disciplinary problems. *Id.*

In this case, Fields has been disciplined in the past for similar conduct. In 2001, Fields received a private admonition for failing to respond to an inquiry from the board. In 2004, he received a public reprimand for neglecting two clients, failing to return papers to a client, and failing to cooperate with the board. And in 2005, he was publically reprimanded for failing to prosecute a postconviction relief appeal, which resulted in dismissal of the client's appeal.

The second public reprimand for the neglect of appellate deadlines was of the same character and occurred concurrently with the neglect that is the basis for this disciplinary action. We have held that

> when a lawyer has already been sanctioned for similar, relatively contemporaneous misconduct, we may refrain from imposing additional discipline for newly discovered ethical violations if we conclude that a more severe sanction would not have been imposed had the newly discovered ethical violations been known when the initial discipline was ordered.

*Id.* at 869; *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. D'Angelo*, 652 N.W.2d 213, 215 (Iowa 2002) (imposing a concurrent sentence, reasoning if additional violations had been brought to the court's attention at the time of the previous sanction, the court "seriously

doubt[s] that respondent's prior suspension . . . would have been enlarged").

This current case involves more than a single instance of neglect. At the same time Fields was neglecting the Townsend civil rights action, he was also neglecting the Ferguson estate. Moreover, in an attempt to cover his neglect, Fields engaged in misrepresentations to his clients and the court, which constituted companion ethical violations. He also failed to respond to the board's inquiries. When these circumstances are considered together, we conclude that Fields' additional misconduct in the civil rights and estate cases would have warranted a more severe sanction than the public reprimand given for the concurrent neglect in the postconviction relief appeal. *See, e.g.*, *Wagner*, 768 N.W.2d at 282–86, 289 (imposing six-month suspension for misconduct involving neglect, misrepresentations, premature taking of fees, trust account violations, failure to respond to the board, and prior public reprimands for neglect and misrepresentation); *Casey*, 761 N.W.2d at 63 (imposing three-month suspension in a disciplinary case involving a probate matter and a personal injury case for neglect, misrepresentation, premature taking of probate fees, and failure to respond to the board's inquiries). We must next determine, then, what sanction is warranted when consideration of Fields' failure to file and pay his income taxes is included.

We have repeatedly held that " '[i]t is as wrong for a lawyer to cheat the government as it is for him to cheat a client.' " *Iverson*, 723 N.W.2d at 810 (quoting *Comm. on Prof'l Ethics & Conduct v. Strack*, 225 N.W.2d 905, 906 (Iowa 1975)). Depending on the circumstances, we have imposed license suspension from sixty days to three years for an attorney's failure to file income tax returns. *See id.* at 810, 812

(imposing one year suspension for failure to file tax returns for ten years); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Engelhardt*, 630 N.W.2d 810, 811–12, 815 (Iowa 2001) (imposing six-month suspension for failure to timely file tax returns for six years); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Wickey*, 619 N.W.2d 319, 319–21 (Iowa 2000) (imposing six-month suspension for failure to file income taxes for four years); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Neuwoehner*, 595 N.W.2d 797, 797–98 (Iowa 1999) (imposing three-month suspension for failure to file income tax returns for three years); *Runge*, 588 N.W.2d at 118–19 (holding attorney's failure to file income tax returns for four years warranted six-month suspension); *Comm. on Prof'l Ethics & Conduct v. Baudino*, 452 N.W.2d 455, 460 (Iowa 1990) (imposing six-month suspension for failing to timely file income tax returns for three years and making false statement on client security questionnaire); *Comm. on Prof'l Ethics & Conduct v. Jay*, 430 N.W.2d 115, 116, 118 (Iowa 1988) (failure to timely file two years of tax returns warranted sixty-day suspension); *Comm. on Prof'l Ethics & Conduct v. McKey*, 343 N.W.2d 489, 490 (Iowa 1984) (imposing two year suspension for failure to file Iowa and federal income tax returns for three years and for falsifying client security questionnaire); *Strack*, 225 N.W.2d at 906 (imposing three year suspension for fraudulently reporting taxable income for two years and failing to file tax return for two years).

In determining the appropriate sanction, we have considered it an aggravating factor for an attorney to have failed to file tax returns for an extended period of time. *Iverson*, 723 N.W.2d at 810 (noting attorney failed to file federal or state income tax returns for almost ten years and viewing such routine failure as a pattern of conduct justifying an increased sanction). We have, however, considered an attorney's

voluntary disclosure of the misconduct to be a mitigating factor of some significance. *See Comm. on Prof'l Ethics & Conduct v. Cook*, 409 N.W.2d 469, 471 (Iowa 1987) (concluding voluntary disclosure indicates both an acknowledgment of failures and a willingness to face up to them). Fields' case is aggravated by the fact that he failed to file his tax returns for ten years. Moreover, his misconduct cannot be mitigated by a finding of voluntary disclosure. His failure to respond to the board's inquiries also constitutes an aggravating circumstance.

On the other hand, it is important to note Fields has acknowledged his misconduct and has not attempted to shift blame for his actions elsewhere. *Iverson*, 723 N.W.2d at 811 (finding acknowledgement of misconduct to be a mitigating factor). We are also cognizant of the respondent's recent medical diagnoses. We have frequently stated that while "[p]ersonal illnesses, such as depression or attention deficit disorder, do not excuse a lawyer's misconduct," they "can be mitigating factors and influence our approach to discipline." *Curtis*, 749 N.W.2d at 703. Although it is uncertain at this time the extent to which medical treatment will assist Fields in successfully returning to the practice of law, his efforts to get healthy must be considered in fashioning an appropriate sanction. *See Hauser*, 782 N.W.2d at 154.

We also note that Fields' license was temporarily suspended on April 25, 2008, under Iowa Court Rule 34.7(3)(c), for failing to respond to the board's inquiries. The board did not seek to withdraw the temporary suspension after the May 1, 2009 hearing, and the respondent's license remains under a temporary suspension. *But see* Iowa Ct. R. 34.7(3)(*d*) (providing for withdrawal of a temporary suspension upon attorney's response to board).

We recently noted in *Lickiss* that "the purpose of the temporary suspension is more than disciplinary; it is also intended to prompt a response to the board's inquires so the disciplinary action may proceed in a timely and informed fashion." 786 N.W.2d at 870. Here, the temporary suspension was initially unsuccessful in prompting a response to the board's inquiries. Fields did not respond until he appeared before the commission on May 1, 2009. In explaining his failure to respond, Fields indicated the same inability to act that resulted in his neglect of his clients and his failure to file his tax returns, also prohibited him from appropriately dealing with the board's inquiries. Based upon these circumstances, we conclude his suspension in excess of one year prior to the hearing was adequate discipline for failing to respond to the board's inquiries, and we will not consider his failure to respond to the board in fashioning any additional discipline. *Id.* (concluding four month temporary suspension for failure to respond to board's inquiry was adequate discipline for that misconduct).

We must, then, consider whether Fields should receive any credit for his continuing temporary suspension since his hearing before the grievance commission, against his other misconduct including neglect of two client matters, misrepresentation, and failure to file his income tax returns.

Fields' temporary suspension was based upon his failure to respond to the board's inquiry. *See* Iowa Ct. R. 34.7(3). As previously noted, Iowa Court Rule 34.7(3)(*d*) provides that once an attorney has responded to the complaint,

> the board *shall*, within five days . . . either withdraw the certificate or file with the supreme court a report indicating that the attorney has responded, but stating cause why the attorney's license should not be reinstated and the

> suspension should be continued under the provisions of Iowa Ct. R. 35.4 [threat of harm], 35.14 [conviction of a crime], or 35.16 [disability].

(Emphasis added.) *See also Lickiss*, 786 N.W.2d at 870 n.3 (noting once an attorney responds, the board is required to withdraw its certificate or provide an alternative basis for continuing the suspension). There is no evidence the board sought to continue the suspension under one of the enumerated court rules after Fields appeared and responded at the hearing on May 1, 2009. Therefore, when the temporary suspension is based solely on an attorney's failure to respond to the board's inquiry, the attorney has responded, and the board did not seek to continue the suspension, we hold it is appropriate for us, in fashioning an appropriate sanction, to consider the continuing temporary suspension from the date of the hearing before the grievance commission. *Compare Comm. on Prof'l Ethics & Conduct v. Halleck*, 325 N.W.2d 117, 118 (Iowa 1982) (where attorney's license was currently under a temporary suspension for more than fourteen months pursuant to court order under Court Rule 118.14 (now rule 35.14), based on attorney's conviction in criminal case, court held the period of temporary suspension constituted a sufficient minimum period of suspension for attorney's misconduct), *with Lickiss*, 786 N.W.2d at 870 (declining to give attorney any credit for his temporary suspension against the imposed suspension because the suspensions were not duplicative).

The commission, having considered the evidence and testimony given at the hearing, recommended Fields' license to practice law be revoked. Upon our respectful consideration of the goals of our ethical rules, mitigating and aggravating circumstances, and our survey of other disciplinary cases, we conclude Fields' conduct warrants a serious sanction, but not revocation. Accordingly, we suspend Fields' license to

practice law indefinitely with no possibility of reinstatement for eighteen months.

## V.  Disposition.

In light of the above facts and circumstances surrounding Fields' conduct, we suspend Fields' license to practice law in this state indefinitely with no possibility of reinstatement for eighteen months from the date of the hearing before the commission, May 1, 2009.  This suspension shall apply to all facets of the practice of law as provided in Iowa Court Rule 35.12(3).  Prior to any reinstatement, Fields must provide this court with an evaluation by a licensed health care professional verifying his fitness to practice law.  He must also establish that he has filed his overdue income tax returns.  Upon any application for reinstatement, Fields must establish he has not practiced law during the suspension period and has complied in all ways with the requirements of rule 35.13 and the notification requirements of rule 35.22.  Costs of this action are taxed to Fields pursuant to rule 35.26.

**LICENSE SUSPENDED.**