# IN THE SUPREME COURT OF IOWA

No. 18–2113

Filed April 19, 2019

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**ANTHONY R. JOHNSON,**

Respondent.

On review of the report of the Iowa Supreme Court Grievance Commission.

Grievance commission recommends revocation of attorney's license to practice law for violations of disciplinary rules. **LICENSE REVOKED.**

Tara van Brederode and Wendell J. Harms, Des Moines, for complainants.

Anthony R. Johnson, Ankeny, for pro se respondent.

**CADY, Chief Justice.**

This case is before us on review from a report and recommendation of a division of the Iowa Supreme Court Grievance Commission concerning attorney Anthony R. Johnson. The report found Johnson committed ethical violations and recommended revocation of his license to practice law. We find Johnson violated the Iowa Rules of Professional Conduct by engaging in criminal conduct involving fraud. We revoke his license to practice law in Iowa.

## I. Background Facts and Proceedings.

Anthony R. Johnson is an Iowa lawyer in Ankeny. He was employed as an accountant for Saxton Motors, LC. In August 2016, Johnson entered an *Alford* plea in the Iowa District Court for Polk County to the felony offense of fraudulent practice in the first degree.[1] The charge was supported by evidence that Johnson embezzled substantial sums of money from his employer by making false entries in the records of the business for over a year. Essentially, Johnson funneled income from the business into two secret, unauthorized business accounts he established to receive the funds.

In October 2016, the district court sentenced Johnson to a suspended ten-year term of incarceration and placed him on probation. The sentence also imposed a fine and ordered him to pay restitution.

Johnson engaged in multiple instances of unethical conduct in the past. His license was suspended in 2009 for abandoning his legal practice in Ankeny. His license was never reinstated, and he has not engaged in the practice of law since that time.

---

[1]An *Alford* plea allows a defendant to enter a plea without an admission of guilt. *North Carolina v. Alford*, 400 U.S. 25, 39, 91 S. Ct. 160, 168 (1970).

## II. Board Complaint.

Based on the criminal conviction, the Iowa Supreme Court Attorney Disciplinary Board filed a complaint against Johnson on May 25, 2018. It alleged that his conduct resulting in the criminal conviction violated Iowa Rule of Professional Conduct 32:8.4(b) (committing a criminal act that reflects adversely on a lawyer's honesty, trustworthiness, or fitness as a lawyer) and rule 32:8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

Johnson did not respond to the complaint after service of notice. *See* Iowa Ct. R. 36.7 (providing allegations of complaint are deemed admitted when respondent fails to timely answer the complaint). He also did not appear at the hearing on the complaint.

The commission found Johnson violated rule 32:8.4(b) by committing the crime of fraudulent practice in the first degree. It also found the crime reflected adversely on Johnson's fitness to practice law, as well as the honesty and trustworthiness required of lawyers. It further found Johnson violated rule 32:8.4(c) by knowingly and intentionally defrauding his employer and that the dishonest conduct also reflected adversely on his ability to practice law. The commission recommended that Johnson's license to practice law be revoked.

## III. Standard of Review.

We review attorney disciplinary actions de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dolezal*, 796 N.W.2d 910, 913 (Iowa 2011). We give respectful consideration to the findings and recommendations by the commission, but are not bound by them. *Id.* The Board must prove the misconduct by a convincing preponderance of the evidence. *Id.*

**IV. Violation.**

**A. Rule 32:8.4(b).**   Rule 32:8.4(b) states, "It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects."   Iowa R. Prof'l Conduct 32:8.4(b).   Yet, not every criminal act committed by attorneys reflects adversely on their fitness to practice law.   *Compare Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 767–68 (Iowa 2010) (concluding the attorney's repeated window peeping raised serious doubt about whether he understood the concept of privacy or had respect for privacy laws, thus reflecting poorly on his fitness to practice law), *with Iowa Supreme Ct. Att'y Disciplinary Bd. v. Keele*, 795 N.W.2d 507, 514 (Iowa 2011) (finding the respondent's federal gun possession conviction did not relate to his ability to practice law).   Instead, a nexus must be established in each case between the criminal activity and the fitness to practice law. *Templeton*, 784 N.W.2d at 767.   The following factors are pertinent in determining whether the criminal conduct of attorneys reflects adversely on their fitness to practice law:

> the lawyer's mental state; the extent to which the act demonstrates disrespect for the law or law enforcement; the presence or absence of a victim; the extent of actual or potential injury to a victim; and the presence or absence of a pattern of criminal conduct.

*Id.* (quoting *In re Conduct of White*, 815 P.2d 1257, 1265 (Oregon 1991) (en banc)).

In this case, each factor supports the conclusion that Johnson's criminal activity, resulting in the conviction of first-degree fraudulent practice in violation of Iowa Code section 714.8 (2016),[2] reflected

---

[2]Johnson entered an *Alford* plea to fraudulent practice in the first degree in violation of sections 714.8, 714.9, and 714.14(2).   Section 714.8 establishes what

adversely on his fitness to be a lawyer. Johnson made false entries in or alterations to his employer's business records by concealing deficiencies resulting from his misconduct. *See id.* § 714.8(4) (providing a person is guilty of a fraudulent practice when they "[m]ake[] any entry in or alteration of any public records, or any records of any corporation, partnership, or other business enterprise or nonprofit enterprise, knowing the same to be false"). Over the course of a year, he deposited the proceeds of automobile sales and insurance payouts belonging to his employer into unauthorized bank accounts[3] for his own use.[4] Additionally, he overpaid himself in excess of $6500.[5] His deliberate and repeated acts resulted in the fraudulent acquisition of funds belonging to his employer. His actions were systematic, targeted, and prolonged and not the result of mere carelessness or misinformation. They demonstrated a clear disrespect for Iowa law and were contrary to the expectations, duties, and responsibilities of a legal professional.

Finally, Johnson's criminal activity wrongfully deprived his employer of funds and transformed his employer into a victim. He

---

conduct constitutes fraudulent practice. Iowa Code § 714.8. Section 714.9 enhances fraudulent practice to the first degree, a class "C" felony, when "the amount of money or value of property or services involved exceeds ten thousand dollars." *Id.* § 714.9. Section 714.14(2) allows two or more fraudulent acts, attributable to a common scheme or plan, to be combined so that the value in question is the "total value of all money, property, and services involved." *Id.* § 714.14(2).

[3]Johnson opened two unauthorized business accounts with Veridian Credit Union. He named one of the accounts Saxon Motors SMQ, assumingly to make it appear as if the account actually belonged to his employer, Saxon Motors, LC. He named the other account Quixotica LLC, likely adding the "LLC" designation to limit the suspicion that might accompany depositing the checks into a personal account.

[4]Johnson deposited three checks from insurance proceeds totaling $5905.96 and two checks from the company's vehicle sales totaling $13,454.

[5]Johnson was employed as a part-time accountant with a salary of $350 per week. His authorized earnings for the duration of his employment were $23,310; however, he paid himself $30,197.97, an excess of $6887.97.

displayed a high disregard for honesty, morality, and trustworthiness. Accordingly, we find Johnson violated rule 32:8.4(b).

**B. 32:8.4(c).** We next consider whether Johnson's conduct violated rule 32:8.4(c). This rule states it is professional misconduct for an attorney to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c).

The criminal act of fraudulent practice in the first degree is fraud, which is identified specifically as misconduct under the rule. Johnson committed this crime by knowingly making false entries in his employer's records to conceal deficiencies in the records in order to divert funds to himself. Thus, while the conduct constituted criminal fraud, it also involved dishonesty, deceit, and misrepresentation.

Rule 32:8.4(c) is broader than rule 32:8.4(b) in some respects because it includes *any conduct* involving dishonesty, not just criminal acts.[6] In this case, rule 32:84(c) not only captures the criminal conduct engaged in by Johnson but also recognizes that the conduct also involves specific behaviors abhorrent to the legal profession. His actions were rooted in deception and secrecy and demonstrated an aversion to truthful interaction with others. We find Johnson violated rule 32:8.4(c).

## V. Sanction.

While Johnson has not practiced law for nearly a decade, his dishonest and criminal conduct as an accountant now compels us to revoke his suspended license to practice law. The stain he imposed on the profession while he practiced law has now been darkened by his actions as an accountant, and the time has come for the remaining

---

[6]Rule 32:8.4(b) allows us to consider acts that reflect adversely on a lawyer's honesty, trustworthiness, and fitness to practice law, but only in the context of their criminal acts. *See* Iowa R. Prof'l Conduct 32:8.4(b). Rule 32:8.4(c) contemplates *any conduct* involving fraud, deceit, or misrepresentation. *See id.* r. 32:8.4(c).

thread that tethers him to the legal profession to be severed. The legal profession is, and must always be, one of justice, honor, civility, and service. It is a profession that requires lawyers to discharge their duties faithfully and ethically. *See* Iowa Code § 602.10110. These words are not hollow or superficial utterances for lawyers as they enter the profession. Instead, they are the basic precepts that bind all lawyers together and serve to sustain lawyers throughout a career. Our profession expects no more of lawyers, but demands no less. Here, Johnson not only gave less, his actions revealed him to be unfit to be an Iowa lawyer. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Guthrie*, 901 N.W.2d 493, 500 (Iowa 2017) (revoking attorney's license for converting client's funds without a colorable future claim); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Green*, 888 N.W.2d 398, 405 (Iowa 2016) (concluding revocation of attorney's license to practice was the proper sanction for his misappropriation and theft of client funds); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Fields*, 790 N.W.2d 791, 797, 799–801 (Iowa 2010) (finding attorney's misconduct resulting in two counts of second-degree fraudulent practice warranted eighteen-month suspension); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Iversen*, 723 N.W.2d 806, 809, 812 (Iowa 2006) (suspending attorney's license for one year due to conduct that resulted in a fraudulent practice conviction); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carroll*, 721 N.W.2d 788, 792 (Iowa 2006) ("[W]e [have not] been deterred from revoking a lawyer's license because the funds converted were not client funds or because the attorney was not acting in the capacity of an attorney at the time of the misconduct.").

## VI. Disposition.

Upon full consideration of this matter, we order Anthony R. Johnson's license to practice law be revoked effective with the filing of

this opinion. Costs are assessed to respondent pursuant to Iowa Court Rule 36.24.

**LICENSE REVOKED.**